# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| **CHRISTOPHER MOODY,** | ) | |
| | ) | |
| **Movant,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:17-cv-00611** |
| | ) | **Judge Aleta A. Trauger** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM

Before the court is movant Christopher Moody's Amended Motion (Doc. No. 13) under 28 U.S.C. § 2255 to set aside, vacate and correct an allegedly illegal sentence and Judgment imposed by another judge of this court. *See United States v. Conyers et al.*, No. 3:09-cr-00240 (M.D. Tenn. Feb. 20, 2014) (Judgment, Doc. No. 2563). (References to the criminal case record will hereafter be designated as "Crim. Doc. No. ___.") For the reasons set forth herein, the court will deny the motion and dismiss this action.

## I.       PROCEDURAL BACKGROUND

Moody was originally charged in December 2010, in a Sixth Superseding Indictment,[1] on counts of conspiring to possess with the intent to distribute five or more grams of a mixture containing a detectable amount of cocaine and crack cocaine and knowingly possessing with the intent to distribute five or more grams of cocaine and crack cocaine within 1000 feet of a public housing development. (Crim. Doc. No. 295.) In the Eleventh (and final) Superseding Indictment issued in November 2013, Moody was charged with eight counts related to drug trafficking and

---

[1] Moody was not named in the original or first five superseding indictments.

firearms. Specifically, he was charged with (1) using a place within 1000 feet of a school to manufacture or distribute a controlled substance, in violation of 21 U.S.C. §§ 841, 856, and 860 (Counts 5 and 12); manufacturing and possessing crack cocaine with intent to distribute, within 1000 feet of a school, in violation of 21 U.S.C. §§ 841 and 860 (Count 6); possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count 7); conspiracy to possess with intent to distribute cocaine and crack cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count 8); possession with intent to distribute cocaine and crack cocaine near a public housing facility, in violation of 21 U.S.C. §§ 841 and 860 (Count 9); and being a previously convicted felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g) (Counts 10 and 11). (Crim. Doc. No. 2468.)

A five-day jury trial was conducted beginning November 19, 2013 before the Honorable William J. Haynes, Jr., retired, after which the jury returned a verdict of guilty on all counts. (Redacted Verdict Form, Crim. Doc. No. 2504.) At the sentencing hearing conducted on February 14, 2014, Moody was sentenced to life imprisonment on Counts 5, 6, 9, and 12; 360 months on Count 8, to run concurrently with the life sentence; 360 months on Counts 10 and 11, to run concurrently with the life sentence; and 60 months on Count 7, to run consecutively to the life sentence. (Judgment, Crim. Doc. No. 2563.) The conviction and sentence were affirmed on direct review. *United States v. Moody*, 631 F. App'x 392 (6th Cir. 2015), *cert. denied*, *Moody v. United States*, 136 S. Ct. 1689 (April 18, 2016).

Moody filed his original Motion to Vacate in this court on March 20, 2017. (Doc. No. 1.) The court thereafter appointed counsel, who filed the Amended Motion to Vacate on April 17, 2017. (Doc. No. 13.) After numerous extensions of the deadline, the United States filed its Response in opposition to the motion on June 15, 2018. (Doc. No. 34.) Moody filed a Reply on October 1, 2018. (Doc. No. 39.)

## II.    THE HABEAS CLAIMS

The court construes the Amended Motion filed by counsel as entirely superseding the original *pro se* motion. The Amended Motion asserts the following claims:

(1) That the trial court erred in instructing the jury that, as to Counts 5, 6, 7, and 10 of the Eleventh Superseding Indictment, the movant could be convicted if "[t]he government . . . convince[s] you beyond a reasonable doubt that the crimes charged happened on or before November 13, 2008" (Doc. No. 13, at 1 (quoting Crim. Doc. No. 2663, at 191), because this meant the jury was instructed that it could convict Moody based on events that fell outside the statute of limitations;

(2) That the jury verdicts on Counts 5, 6, 7, and 10 violated Moody's right to due process insofar as he was convicted based on events that took place outside the statute of limitations;

(3) That the jury verdicts on Counts 5, 6, 9, and 12 violate Moody's right to due process under the Fifth Amendment, because the jury was not instructed to find that he had any culpable mental state regarding knowledge of being, or intent to be, within 1000 feet of a school or public housing facility;

(4) That the "enhanced sentence of life imprisonment" on Counts 5, 6, 9 and 12, which was premised on prior convictions for felony drug offenses, violates Moody's rights under the Fifth, Sixth, and Eighth Amendments to the United States Constitution, because the fact of these prior convictions was not charged in the indictment or found by the jury beyond a reasonable doubt;

(5) That the enhanced sentence on Counts 5, 6, 9, and 12 under 21 U.S.C. § 860, based on prior state court felony drug convictions, violated 21 U.S.C. § 860(b), which permits enhancement based only on federal felony drug convictions under § 860 itself;

(6) That Moody's life sentence on Counts 5, 6, 9, and 12 constitutes cruel and unusual

punishment in violation of the Fifth and Eighth Amendments, insofar as it was based on "prior minor felony drug offenses which were then used to ratchet [Moody's] current offenses to a life sentence without parole" (Doc. No. 13, at 6), and insofar as life sentences for drug offenses are exceedingly rare, this sentence was imposed disparately based on Moody's race, is disproportionate to the offenses of conviction, is not narrowly tailored to serve a compelling government interest, and is not justified by any valid penological theory;

(7) That the government's use of 21 U.S.C. § 851 to seek a life sentence violates Moody's right to equal protection, because this statute is "used disproportionately and unfairly and in the government's unlimited discretion to target [Moody], an African-Americans [sic], for a life sentence" (Doc. No. 13, at 7);

(8) That Moody's right to due process was violated by the court's instructing the jury that it could convict him on possession of controlled substances or a firearm based on "constructive possession," even though the governing statutes require actual possession;

(9) That Moody's convictions on Counts 5 and 12 are invalid and in violation of the Fifth and Sixth Amendments to the United States Constitution, because Moody was indicted merely for using a location to manufacture or to possess with intent to distribute "controlled substances," but the Eleventh Superseding Indictment did not identify what controlled substances were involved, and the jury was never instructed as to the definition of "controlled substance" or to find the existence of a controlled substance beyond a reasonable doubt (Doc. No. 13, at 8);

(10) That Moody's convictions violate *Johnson v. United States*, 135 S. Ct. 2551 (2015);

(11) That Moody's convictions violate *Batson v. Kentucky*, 476 U.S. 79 (1986), and the Fifth Amendment, because potential jurors were removed in part or in substantial part because of race;

(12) That Moody was deprived of the effective assistance of counsel at trial, in violation

of the Sixth Amendment;

(13) That Moody was deprived of the effective assistance of counsel on appeal; and

(14) That the cumulative effect of all of the errors at trial deprived Moody of the right to a fair trial, in violation of the Fifth Amendment.

## III.    LEGAL STANDARDS

Moody seeks relief under 28 U.S.C. § 2255. Under that statute,

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . or that the sentence was in excess of the maximum authorized by law . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). "To succeed on a § 2255 motion, a prisoner in custody must show '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *McPhearson v. United State*s, 675 F.3d 553, 558–59 (6th Cir. 2012) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). In § 2255 proceedings, it is the movant's burden to show his entitlement to relief. *Potter v. United States*, 887 F.3d 785, 787–88 (6th Cir. 2018).

"A § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances," such as a change in the law. *Dupont v. United States*, 76 F.3d 108, 110–11 (6th Cir. 1996). At the same time, because a § 2255 motion is not a substitute for a direct appeal, any claims *not* raised on direct review are procedurally defaulted and may not be raised on collateral review unless the movant shows "(1) 'cause' excusing [the] procedural default, and (2) 'actual prejudice' resulting from the errors," *United States v. Frady*, 456 U.S. 152, 168 (1982) (citations omitted), or demonstrates that he is "actually innocent." *Bousley v.*

*United States*, 523 U.S. 614, 622 (1998) (citations omitted).[2]

Ineffective assistance of trial or appellate counsel can constitute cause excusing procedural default. *See Sullivan v. United States*, 587 F. App'x 935, 948 (6th Cir. 2014) (citing *Bousley*, 523 U.S. at 622). Where a movant claims that a procedural default occurred due to the ineffective assistance of counsel, "relief under § 2255 [is] available subject to the standard of *Strickland v. Washington*, [466 U.S. 668 (1984)]." *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). Ineffective assistance of counsel, under the *Strickland* standard, can also serve as an independent ground for § 2255 relief. *See, e.g.*, *Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012). Moody's motion addresses both aspects of ineffective assistance.

Under *Strickland*, to establish ineffective assistance of counsel, "[f]irst, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

To demonstrate deficient performance by counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. In considering an ineffective-assistance claim, a court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance. . . . The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687, 689).

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but

---

[2] Moody, in the present case, does not raise a claim of actual innocence.

for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 111–12 (citing *Wong v. Belmontes*, 558 U.S. 15, 27 (2009); *Strickland*, 466 U.S. at 693).

"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. *Id.* "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) (citing *Strickland*, 466 U.S. at 689, 693).

An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and to raise issues not presented at trial, so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Richter*, 562 U.S. at 105 (citations omitted). "Counsel [cannot] be unconstitutionally ineffective for failing to raise . . .

meritless arguments." *Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999).

## IV. DISCUSSION

### A. Whether a Hearing Is Required

A prisoner who files a motion under § 2255 challenging a federal conviction is generally entitled to "a prompt hearing," at which the district court is to "determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. The hearing is mandatory, "unless 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Fontaine v. United States*, 411 U.S. 213, 215 (1973) (quoting 28 U.S.C. § 2255(b)). However, to be entitled to a hearing, the movant must "set forth facts" that show he is entitled to relief; mere "[c]onclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). Indeed, when a "petitioner's claims are stated in the form of conclusions without any allegations of facts in support thereof, as well as being unsupported by proof or reference to such proof," his motion is "legally insufficient to sustain a review." *Short v. United States*, 504 F.2d 63, 65 (6th Cir. 1974) (per curiam); *see also Thomas v. United States*, 849 F.3d 669, 681 (6th Cir. 2017) ("Bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the government to respond to discovery or to require an evidentiary hearing.").

On the other hand, "[i]f the record includes a factual dispute, the district court must hold a hearing to determine the truth of the [movant's] claims." *Ross v. United States*, 339 F.3d 483, 490 (6th Cir. 2003) (quotation marks and citation omitted). However, "no hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Arredondo v. United States*, 178 F.3d 778, 782

(6th Cir. 1999)).

Upon consideration of the amended Motions, the government's Response, the movant's Reply, and the underlying record, the court finds that the movant has failed to set forth facts showing that he is entitled to relief or that there are material factual disputes that warrant a hearing. As there are no evidentiary issues to be resolved and the record "conclusively show[s] that the prisoner is entitled to no relief," 28 U.S.C. § 2255(b), the court will not conduct a hearing on Moody's motion.

B.     **Resolution of the Claims**

Most of Moody's claims are procedurally defaulted, though he has tried ineffectually to establish cause and actual prejudice to overcome the default by asserting that his trial or appellate counsel was ineffective for failing to raise the claims at trial or on appeal. Moody cannot establish that his counsel's performance was constitutionally deficient, and he cannot overcome the procedural default with respect to any of his substantive claims. As set forth below, all of his claims are without merit.

*Claims 1, 12(a), and 13(a)*

Moody claims that the district court "erred in instructing the jury that, as to Counts 5, 6, 7, and 10 of the indictment, Petitioner could be convicted if '[t]he government . . . convince[s] you beyond a reasonable doubt that the crimes charged happened *on or before November 13, 2008*.'" (Doc. No. 13, at 2 (quoting Nov. 22, 2013 Trial Tr., Crim. Doc. No. 2663, at 191) (emphasis added by the movant).) This instruction was erroneous, because the statute of limitations under 18 U.S.C. § 3282(a) is five years and the Eleventh Superseding Indictment was returned on November 13, 2013, meaning that any conduct that took place *before* November 13, 2008 was outside the statute of limitations. Moody asserts that, because this instruction was clearly erroneous, he was deprived of his statute of limitations defense, "in violation of 18 U.S.C.

§ 3282 and due process and equal protection under the Fifth Amendment." (Doc. No. 13, at 2–3.)

The court notes, as an initial matter, that this issue was waived on appeal because it was not brought to the trial court's attention contemporaneously, in time to correct it. *See, e.g.*, *United States v. Sheffey*, 57 F.3d 1419, 1431 (6th Cir. 1995) ("Unless exceptional circumstances are present, this court normally will not address issues not raised for the first time in the district court."). More to the point, the claim is procedurally defaulted, because it was not presented to the Sixth Circuit on direct appeal.[3] Moody appears to try to establish cause for the default and actual prejudice arising from it by raising claims of ineffective assistance of trial counsel (Claim 12(a)) and appellate counsel (Claim 13(a)), based on counsel's failure to raise this issue at trial or on direct appeal. Because the ineffective-assistance claims are not procedurally defaulted, the court will address the issue on its merits.

The Sixth Circuit "has set a high standard for reversal of a conviction on the grounds of improper instructions." *Sheffey*, 57 F.3d at 1429. The court's "inquiry into jury instructions is limited to whether, taken as a whole, the instructions adequately inform the jury of the relevant considerations and provide the jury with a sound basis in law with which to reach a conclusion." *United States v. Wells*, 211 F.3d 988, 1002 (6th Cir. 2000). "This court may reverse a judgment on the basis of improper jury instructions only if the instructions, when viewed as a whole, were confusing, misleading and prejudicial." *Roberts ex rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 787 (6th Cir. 2003) (citations omitted).

---

[3] As the government points out, the Sixth Circuit did consider, and reject, Moody's argument that the trial judge improperly "allowed the jury to use pre-statute of limitations character evidence to evaluate the defendant's guilt without the protection of a 404(b) charge." *United States v. Moody*, No. 14-5205 (6th Cir. March 17, 2015) (Appellant's Brief, Doc. No. 33, at 30). Counsel did not argue on appeal that the trial judge's misstatement constituted reversible error. Interestingly, in fact, counsel incorrectly quoted the judge as instructing the jury that the government must prove that the "crimes charged happened on or after November 13, 2008. *Id.* (quoting Crim. Doc. No. 2663, at 131).

In this case, it is clear that the statement that Moody could only be convicted on the basis of conduct that took place "on or before November 13, 2008" was actually erroneous. Moody has not established, however, that this single misstatement, when considered in the context of the instructions as a whole, was confusing, misleading, or prejudicial. Rather, it is apparent that the trial judge's single reference to "on or *before* November 13, 2008" was a simple mistake, abundantly overridden by more specific instructions to the jury that it could *not* convict based on conduct that preceded November 13, 2008.

As the government explains, a first draft of jury instructions provided to the parties by Judge Haynes, attached as Exhibit A to the government's Response, contained language informing the jury that it could only convict Moody on Counts 5, 6, 7, and 10 based on conduct that happened "on or after November 13, 2008." (Doc. No. 34-1, at 73.) On November 21, 2013, after the close of proof, the parties discussed the draft instructions with the court. (Crim. Doc. No. 2662, at 141–54.) As the transcript of that portion of the charge conference makes clear, the parties and the court agreed that the jury should be told that it could not convict unless it found that Moody committed the crimes on or *after* November 13, 2008. (*Id.* at 145.) The court also agreed to provide the parties with a complete final set of the written jury instructions before they gave their closing arguments. (Crim. Doc. No. 2663, at 12.)

The *printed* final jury instructions are not in the record.[4] According to the trial transcript, that portion of the jury instructions in which the mistake appears was read by the court as follows:

> The defendant asserts that prosecution for crimes charged in Counts Five, Six, Seven and Ten of the 11th Superseding Indictment are prohibited under the statute

---

[4] The government's attorney represents that he spoke to the Clerk's Office and ascertained that the paper case file does not contain a copy of the written jury instructions. (Doc. No. 34, at 6 n.3.)

of limitations for these crimes.

> The statute of limitations is a law that puts a limit on how much time the government has to obtain an indictment. No person shall be prosecuted, tried or punished for any offense unless the indictment is found within five years next after such offense shall have be committed. The government filed the 11th Superseding Indictment on November 13, 2013. The government must convince you beyond a reasonable doubt that the crimes charged happened *on or before November 13, 2008*. Thus, a conviction cannot be based upon conduct that occurred *before this date*.

> You may consider the defendant's conduct prior to the statute of limitations to evaluate the defendant's conduct within the statute of limitations and whether the conduct within the statute of limitations establishes the defendant's guilt beyond a reasonable doubt. You cannot use any pre-statute of limitations conduct for any other purpose.

(Crim. Doc. No. 2663, at 191–92 (emphasis added).) Neither party made a contemporaneous objection to the error ("on or before November 13, 2008"), likely because neither noticed it.[5] Regardless, review of this instruction as a whole makes it clear that the jury could not have been confused or misled by the judge's apparent slip of the tongue. The jury was repeatedly instructed that it could only convict based on conduct that took place within the five-year statute of limitations, and it was also told that a conviction could only be premised on conduct that occurred *after* November 13, 2008, including in the sentence following the one in which the error appears ("Thus, a conviction cannot be based upon conduct that occurred before this date.").

Moreover, if the jury even noticed the judge's error, it could have resorted to the printed instructions for clarification. The judge informed the jury members, both before he began reading the instructions and after he finished, that they would be provided with a written copy of

---

[5] Counsel for the government represents that he contacted the court reporter to verify whether the transcript was correct. The court reporter responded: "I have checked my cassette tape of the portion of the transcript in question and listened to it several times. Judge Haynes is reading the charge very rapidly, but the tape does reflect that he does say 'on or before November 13, 2008.'" (Doc. No. 34, at 6–7 n.4.)

the instructions. (Crim. Doc. No. 2663, at 50, 197–98.) Although this court has no ability to view the printed version from which Judge Haynes read, the available circumstantial evidence strongly leads to the conclusion that the written version of the instruction actually provided to the jury was correct. In addition to the fact that the draft version provided to the parties before the charge conference (Doc. No. 34-1) is correct and that the parties discussed the matter during the charge conference, the record reflects that Assistant U.S. Attorney Sunny Koshy read from the final written instructions provided by the court during his closing argument. When he did, Koshy read the statute of limitations instruction to say that the jury should acquit unless it found that Moody committed the crime "on or after November 13, 2008." (Crim. Doc. No. 2663, at 131.)

Moody makes no attempt to explain how he was prejudiced by a single misstatement in the context of an otherwise clear and correct instruction. He insists only that, because "we cannot know . . . whether the jury followed the judge's oral instruction or whether the written instruction taken with them into the jury room was correct, we cannot exclude the fact that the verdict rendered was illegal or unconstitutional." (Doc. No. 39, at 3.) The problem with this argument is that the movant bears the burden of establishing the facts entitling him to relief. Rank speculation that the written instruction *might* have been incorrect—all evidence to the contrary notwithstanding—and that the jury *might* have been misled by a single error—one that the attorneys did not even notice and which was corrected and clarified by the very next sentence— does not constitute evidence of prejudice or confusion.

In short, even if this issue had been preserved and raised on appeal, it would not have afforded relief, because Moody cannot establish that the jury instructions, "when viewed as a whole, were confusing, misleading and prejudicial." *Roberts*, 325 F.3d at 787. Because Claim 1 fails on its merits, Moody cannot establish that he was prejudiced by trial counsel's failure to notice the error or appellate counsel's failure to raise it on appeal. His claims of ineffective

assistance of counsel premised on those failures (Claims 12(a) and 13(a)) are also without merit. The court will, however, issue a certificate of appealability ("COA") on Claims 1, 12(a), and 13(a).

### Claims 2, 12(b), 13(b)

In Claim 2, Moody asserts that "[t]he jury verdicts as to Counts 5, 6, 7, and 10 violated due process of law" because the verdict form—consistently with the language of the Eleventh Superseding Indictment—alleged that the charged conduct occurred "between in or around January 2008 through in or around December 2008." (Doc. No. 13, at 3–4.) That is, he argues that trial counsel was ineffective for failing to object to the jury verdict form on the basis that it permitted a conviction based on conduct that took place before November 13, 2008 (Claim 12(b)) (Doc. No. 13, at 10) and that appellate counsel was ineffective for failing to raise the issue on appeal (Claim 13(b). (Doc. No. 13, at 15).

This verdict-form argument was not raised on direct appeal and is procedurally defaulted. By raising claims of ineffective assistance of counsel based on the same issue, Moody appears to be trying to establish cause for the default and actual prejudice resulting from it, in order to overcome the procedural default. The court will therefore consider the issue on its merits.

Claim 2 is related to, but does not precisely overlap with, the statute of limitations argument Moody did raise on direct appeal. In addressing that argument, the Sixth Circuit stated:

> Moody also contends that the district court's instructions "allow[ed] the prosecutor" to urge the jury "to find [Moody] guilty of the charges in the statute of limitation[s]" because "Moody was a drug dealer before the statute of limitations[.]" But the district court said the opposite: "[A] conviction cannot be based upon conduct that occurred before [the statute of limitations] date. You may consider [Moody's] conduct prior to the statute of limitations to evaluate [his] conduct within the statute of limitations and whether the conduct within the statute of limitations establishes [his] guilt beyond a reasonable doubt." R. 2663 at 191–92. The district court further warned the jury that it "[could] not use any prestatute of limitations conduct for any other purpose." *Id.* Those instructions were correct, and Moody's argument is meritless.

*United States v. Moody*, 631 F. App'x 392, 396 (6th Cir. 2015).

The language of the verdict form simply mirrored that of the indictment. The Sixth Circuit held that introduction of evidence of conduct preceding the limitations period is not erroneous so long as the jury is properly instructed that it cannot convict based on that evidence. *See id.*; *accord United States v. Mancuso*, 718 F.3d 780, 790 (9th Cir. 2013) ("Mancuso argues that the indictment improperly included charges beyond the applicable five-year statute of limitations because Counts I, II, and III alleged violations spanning a period of seven and a half [sic] years. We have held that the statute of limitations does not bar the introduction of evidence of acts that occurred outside of the limitations period."). Even assuming that the verdict form erroneously made reference to a time span preceding the limitations period, "the instruction to the jury mitigates any concerns that [the defendant] was found guilty for events occurring outside of the statute of limitations." *Mancuso*, 718 F.3d at 790.

Claim 2 is without merit. Thus, counsel was not ineffective for failing to raise this particular argument. Claims 12(b), and 13(b), too, are meritless. The court will nonetheless grant a COA on Claims 2, 12(b), and 13(b).

### Claims 3, 12(c) and 13(c)

In Claim 3, Moody argues that the jury verdicts on Counts 5, 6, 9, and 12 violate due process because the jury was not instructed to find, and did not find, that he had any *intent* to manufacture or distribute drugs within 1000 feet of a school or public housing facility. Claim 3, too, is procedurally defaulted. Claims 12(c) and 13(c), while not defaulted, are without merit, because Moody cannot establish cause or actual prejudice arising from his attorney's failure to raise this issue at trial or on appeal.

Moody relies on *Staples v. United States*, 511 U.S. 600 (1994), for his *mens rea*

argument, but that case, which concerned the National Firearms Act and specifically 26 U.S.C. § 5861(d), simply supports the general proposition that "some indication of congressional intent, express or implied, is required to dispense with *mens rea*." *Staples*, 511 U.S. at 605. Prior to *Staples*, the Sixth Circuit had held that a conviction under 21 U.S.C. § 860 does not require proof of actual intent to manufacture or sell controlled substances within 1000 feet of a school or public housing facility. *See United States v. Lloyd*, 10 F.3d 1197, 1218 (6th Cir. 1993) ("Under 21 U.S.C. § 860 . . . , a district court may double the penalty for anyone found to have distributed cocaine in violation of section 841(a), where that person sold the cocaine within 1,000 feet of a school. This court has interpreted this statute as not incorporating any *mens rea* requirement; thus, the jury did not need to find an intent on Little's part to deliver drugs within 1000 feet of the school." (citing *United States v. Cross*, 900 F.2d 66, 68–69 (6th Cir. 1990)).

Even following *Staples*, numerous courts have concluded that § 860 does not require proof of a defendant's intent to manufacture or deliver drugs within 1000 feet of a school or public housing facility. *See, e.g.*, *United States v. Jackson*, 443 F.3d 239, 299 (3d Cir. 2006) ("[T]he *mens rea* element for § 860(a) is found in the required underlying violation of § 841(a)(1), which calls for a knowing possession of narcotics with intent to distribute."); *United States v. Harris*, 313 F.3d 1228, 1240 (10th Cir. 2002) ("[W]e hold that to obtain a conviction under § 860(a) for possession with intent to distribute, the government need only prove that the defendant possessed illegal drugs within 1,000 feet of a school and intended to distribute them somewhere."). As one court has explained:

> [W]hen asked to infer *mens rea* requirements in other criminal statutes, neither this Court nor our sister circuits have relied solely on whether a particular provision is an element of the offense or a sentencing factor. Instead, this Court and others have frequently found that certain offense elements do not require proof of an additional *mens rea*, so long as the offense as a whole carries a scienter requirement that separates innocent from criminal conduct. . . . For example, the Drug Free School Zones Act, 21 U.S.C. § 860, provides heightened

> penalties for drug distribution within 1,000 feet of a school. In a prosecution under that statute, however, the government need not prove the defendant's knowledge of his proximity to a school.

*United States v. Burwell*, 690 F.3d 500, 508 (D.C. Cir. 2012).

Claim 3 is without merit. Because counsel was not objectively unreasonable for failing to raise a meritless argument either at trial or on appeal, Claims 12(c) and 13(c) are equally meritless.

### Claims 4, 12(d), and 13(d)

Moody's sentence on Counts 5, 6, 9, and 12 was enhanced to life imprisonment based on the court's finding that Moody had prior convictions for felony drug offenses. In Claim 4, Moody argues that the enhancement of his sentence on these counts violated his rights under the Fifth, Sixth, and Eighth Amendments, because those prior convictions were not alleged in the indictment and proved to the jury beyond a reasonable doubt. This claim was procedurally defaulted, but Moody appears to seek to overcome the default by alleging that counsel was ineffective for failing to articulate this objection at trial and on appeal.

As Moody himself recognizes, the Supreme Court decided twenty years ago that prior convictions that enhance a defendant's sentence are not elements of a crime that must be submitted to a jury. *Almendarez-Torres v. United States*, 523 U.S. 224, 241–42 (1998). Although the force of that decision has been eroded over time, the Sixth Circuit has repeatedly, and recently, held that *Almendarez-Torres* "is still good law and will remain so until the Supreme Court explicitly overrules it." *United States v. Farrad*, 895 F.3d 859, 888 (6th Cir. 2018) (quoting *United States v. Nagy*, 760 F.3d 485, 488 (6th Cir. 2014) ; *see also United States v. Pritchett*, 749 F.3d 417, 434 (6th Cir. 2014); *United States v. Mack*, 729 F.3d 594, 609 (6th Cir. 2013).

Moody understandably makes this argument in order to preserve it for Supreme Court review (*see* Doc. No. 39, at 3), but this court is not empowered to grant him relief on Claim 4. Likewise, Moody cannot establish that counsel was ineffective for failing to raise an argument already foreclosed by the Supreme Court or that he was prejudiced by that purported failure; Moody is not entitled to relief on Claims 12(d) or 13(d) either. The court will, however, grant a certificate of COA on Claims 4, 12(d), and 13(d).

### Claims 5, 12(e), and 13(h)

In Claim 5, Moody argues that his sentence under 21 U.S.C. § 860 for Counts 5, 6, 9, and 12 was incorrectly enhanced to life imprisonment based on a misreading of § 860. He asserts that his sentence was enhanced based on prior felony drug convictions in state court, but that § 860(b) only permits enhancement based upon "prior convictions under § 860 itself," which allows enhancement only once "a 'prior conviction under subsection (a) [§ 860(a)] has become final.'" (Doc. No. 13, at 6 (quoting 21 U.S.C. § 860(b)).) This claim is procedurally defaulted, but Moody also claims that his attorney was ineffective at trial and on appeal for not raising this issue (Claims 12(e), 13(d)), apparently with the hope of overcoming the procedural default.

This argument is foreclosed both by controlling precedent and a straightforward reading of the statutory text. Section 860(a) establishes the penalty for engaging in drug trafficking in violation of 21 U.S.C. § 841(a)(1) within 1000 feet of certain institutions, including schools and public housing facilities. Generally, § 860(a) doubles both the maximum prison sentence and supervised release term provided for in 21 U.S.C. § 841(b) for such convictions.

Under § 860(b), "[a]ny person who violates section 841(a)(1)" by distributing or manufacturing a controlled substance within 1000 feet of certain institutions, including schools and public housing facilities, after a prior conviction under § 860(a) is subject to penalties of three times the prison sentence (but no less than three years or more than life), three times the

term of supervised release, and three times the fine imposed by § 841(b) for a first offense. 21 U.S.C. § 860(b). This appears to be the provision upon which the movant's claims rely. Section 860(b) also expressly provides, however, that "[p]enalties for third and subsequent convictions shall be governed by section 841(b)(1)(A) of this title."

Section 841(b)(1)(A) states, in pertinent part: "If any person commits a violation of [§ 860] after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release." The term "felony drug offense" is defined in 21 U.S.C. § 802(44) as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." The Supreme Court has held that the definition of "felony drug offense" in § 802(44) is the controlling definition for purposes of § 841(b)(1)(A). *Burgess v. United States*, 553 U.S. 124, 127 (2008). While the *Burgess* Court decided this issue in reference to the twenty-year mandatory-minimum provision, the Sixth Circuit, citing *Burgess*, has also applied it in the context of applying the mandatory life sentence. *See United States v. Graham*, 622 F.3d 445, 456 (6th Cir. 2010) ("[Section] 841(b)(1)(A) uses the same language in both the twenty-year and the life-term mandatory-minimum provisions.").

In other words, the enhancement of Moody's sentence under § 860 was not premised on an erroneous reading of the statute. Claim 5 is without merit, and his counsel was not objectively unreasonable in failing to raise a meritless claim.

### *Claims 6, 12(f), and 13(e)*

Moody asserts that his life sentence for the convictions on Counts 5, 6, 9, and 12 is disproportionate to the crimes of conviction and, as such, constitutes cruel and unusual punishment in violation of the Fifth and Eighth Amendments. He also claims that the fact that

such a sentence is rare (imposed in only .3% of drug cases) and "imposed disparately based upon Petitioner's race,"[6] "not narrowly tailored to serve any compelling government interest," and unjustified by any penological theory further establish that the punishment is cruel and unusual. He characterizes the sentence as "based upon prior minor felony drug offenses which were then used to ratchet [his] current offenses to a life sentence without parole." (Doc. No. 13, at 6.) This claim, too, is procedurally defaulted, but the movant appears to be attempting to establish cause for the default and actual prejudice by likewise claiming that his attorney was constitutionally ineffective insofar as he failed to raise this issue at sentencing or on direct appeal. (Claims 12(f), 13(e).)

Moody cites *Solem v. Helm*, 463 U.S. 277 (1983), and *Graham v. Florida*, 560 U.S. 48 (2010), in support of these claims, but he makes no effort to show that his case is comparable to either of those. The *Solem* Court held that the Eighth Amendment bars, not only barbaric punishments, but also sentences that are disproportionate to the crime of conviction. 463 U.S. at 284. The Supreme Court identified factors that sentencing courts should weigh in evaluating the proportionality of a particular sentence, including (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction, that is, whether more serious crimes are subject to the same or to less serious penalties; and (3) the sentences imposed in different jurisdictions for the same crime. *Id.* at 290–92. Based on these principles, the Court held that a life sentence without the possibility of parole was unconstitutionally disproportionate where the crime of conviction—uttering a no-account check for $100—was minor and non-violent; the defendant's prior felony convictions were relatively

---

[6] Moody does not include any facts to support his assertion in Claim 6 that the sentence was "imposed disparately" based on his race other than to cross-reference Claim 7, discussed below.

minor; he received the most severe sentence the State of South Dakota could impose on any criminal; and only one other state, Nevada, authorized a life sentence without parole under similar circumstances. *Id.* at 296–300. In *Graham*, applying a similar analysis, the Court held that the Eighth Amendment categorically prohibits the imposition of a sentence of life without parole on a juvenile defendant who did not commit homicide. 560 U.S. at 82. Neither case is comparable to Moody's.

While the movant has not provided the court with any compelling precedent suggesting that his sentence is disproportionate to the crimes in light of the factors identified in *Solem*, numerous opinions have upheld the constitutionality of a life sentence based on less serious crimes and more mitigating factors than are present here. In *Harmelin v. Michigan*, 501 U.S. 957, 994 (1991), the Supreme Court held that the imposition of a mandatory sentence of life without the possibility of parole based on a conviction for simple possession of more than 650 grams of cocaine was not cruel and unusual, despite the fact that the defendant had no prior felony convictions. There, a plurality rejected the argument that the Eighth Amendment required strict proportionality between crime and sentence and instead concluded that the Eighth Amendment only prohibited "extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at 1001.

Applying *Harmelin*, the Sixth Circuit has held that a life-without-parole sentence for a defendant who had two prior felony drug convictions and was convicted of conspiring to distribute 177.9 grams of cocaine base "was not so 'grossly disproportionate' to his crime as to violate the Eighth Amendment." *United States v. Hill*, 30 F.3d 48, 50 (6th Cir. 1994). Likewise, in *United States v. Flowal*, 163 F.3d 956, 964 (6th Cir. 1998), the court upheld a sentence of life without parole for a defendant with two prior drug convictions who was found to have distributed at least 5,000 grams of cocaine. The court rejected the argument that the sentence

violated the Eighth Amendment, noting that "the circumstances underlying this defendant's conviction are more egregious than those that justified the life sentence imposed in *Harmelin* and are very similar to those in *Hill*."

Moody had four prior felony convictions for drug-related offenses. (Information, Crim. Doc. No. 2488.) He was responsible for over 7,000 grams of cocaine. (PSR, Crim. Doc. No. 2574 ¶ 43.) His claim that his sentence is grossly disproportionate to the crimes of conviction is without merit. Counsel was not ineffective for failing to raise a meritless claim.

### Claims 7, 12(g), and 13(f)

Claim 7 posits that Moody's life sentence was imposed in violation of his right to equal protection, because it was "based upon the government's use of 21 U.S.C. § 851, which is used disproportionately and unfairly and in the government's unlimited discretion to target Petitioner, an African-American[], for a life sentence." (Doc. No. 13, at 7.) In an attempt to overcome the procedural default of this claim, Moody also raises ineffective-assistance claims based on counsel's failure to raise this issue at sentencing or on appeal.

In support of this claim, Moody incorporates by reference statistics cited in a motion to dismiss for selective and vindictive prosecution filed in *United States v. Montgomery*, No. 3:15-cr-00184 (M.D. Tenn. June 17, 2016) (Doc. Nos. 119, 119-2). He claims that those figures show that the U.S. Attorney's Office in this district has a pattern and practice of disproportionately targeting African Americans for enhancements under § 851. He requests further discovery and an evidentiary hearing to establish his allegations.

Moody fails to point out that the district court in *Montgomery* rejected the selective-prosecution argument and the Sixth Circuit affirmed, stating:

> A selective-prosecution claim asks a court to exercise judicial power over a
> special province of the Executive. Because federal law enforcement retain[s]
> broad discretion to enforce the Nation's criminal laws, a presumption of regularity

supports their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their duties. And so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute . . . generally rests entirely in his discretion.

The Constitution, however, imposes outer bounds on that discretion. One of these constraints, imposed by the equal protection component of the Due Process Clause of the Fifth Amendment, is that the decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification. A defendant alleging that sort of selective prosecution must demonstrate that the administration of a criminal law is directed so exclusively against a particular class of persons . . . with a mind so unequal and oppressive that the system of prosecution amounts to a practical denial of equal protection of the law. And he must do so by proffering clear evidence that the prosecutor's policy had both a discriminatory purpose and effect. As for the purpose requirement, a defendant must prove that the decisionmakers in *his* case acted with discriminatory purpose. To satisfy the effect element, a defendant must show that similarly situated individuals of a different race were not prosecuted.

*United States v. Merriweather*, 728 F. App'x 498, 507–08 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 192 (2018) (internal citations and quotation marks omitted).

In *Merriweather*, the Sixth Circuit further noted that courts should hesitate even to grant discovery to develop a selective-prosecution claim "without first assessing the case's strength," because such discovery risks "divert[ing] prosecutors' resources [or] disclosing the Government's prosecutorial strategy." *Id.* at 508 (quoting *United States v. Armstrong*, 517 U.S. 456, 464 (1996)). Thus, a defendant "pressing such a claim must make a 'credible showing' of both discriminatory effect and discriminatory intent" before the court grants discovery. *Id.* The court considered the evidence offered by the defendant there in support of his claim and concluded that the district court did not err in finding that he had failed to make the requisite "credible showing" of discriminatory effect or intent. *Id.* at 509.

Moody here has offered *no* evidence beyond the statistics rejected in the case for which they were compiled. Moody does not even attempt to argue that the decision makers in his case acted with discriminatory intent or that similarly situated individuals of a different race were not

targeted for § 851 enhancements. He has not established a *prima facie* case of disproportionate sentencing and has not provided any basis for being permitted discovery. This claim is utterly unsupported, and Moody cannot establish that counsel was ineffective for failing to raise this issue at trial or on appeal or that he was prejudiced by any such failure.

### Claims 8, 12(h), and 13(g)

Next, Moody argues that the trial court erred in instructing the jury that he could be convicted of possessing controlled substances or a firearm based on "constructive" rather than actual possession and that, as a result, his conviction is in violation of 21 U.S.C. § 841 and his right to due process. Again, the claim is procedurally defaulted, but the movant also raises ineffective-assistance claims based on counsel's failure to raise this claim at trial or on appeal. (Claims 12(h) and 13(g).)

Judge Haynes indeed instructed the jury that "[t]he term possession includes both actual and constructive possession" and that "constructive possession" meant "that the defendant had the right to exercise physical control over the item, and knew that he had this right, and that he intended to exercise physical control over the item at some time, either directly or through other persons." (Crim. Doc. No. 2663, at 172–74.)

Counsel for the movant did not object to this instruction at trial or on appeal, but his decision not to do so is explained by the fact that the Sixth Circuit has long held that "'[p]ossession may be either actual or constructive and it need not be exclusive but may be joint.'" *United States v. Johnson*, 726 F. App'x 393, 405 (6th Cir. 2018) (quoting *United States v. Paige*, 470 F.3d 603, 610 (6th Cir. 2006) (quoting *United States v. Covert*, 117 F.3d 940, 948 (6th Cir. 1997))). Moody cites a Supreme Court case in support of the proposition that a word used in a drug statute "must be given its ordinary or natural meaning." *Bailey v. United States*, 516 U.S. 127, 145 (1995). *Johnson* does not conflict with that principle, however.

An accurate instruction to the jury that possession can be either actual or constructive did not violate Moody's right to due process. Moody's substantive claim is meritless, and counsel was not constitutionally ineffective for failing to raise it, either at trial or on direct appeal.

### Claims 9, 12(i), and 13(i)

Moody asserts that his convictions on Counts 5 and 12 are invalid and unconstitutional, because, although he was indicted for using a location to manufacture and distribute a controlled substance, the jury was never instructed on the definition of "controlled substance" or instructed to find the existence of a controlled substance beyond a reasonable doubt. (Doc. No. 13, at 8–9.) This claim is procedurally defaulted, but his claims that counsel was ineffective for not raising this issue at trial or on appeal are not procedurally defaulted.

Counts 5 and 12 of the Eleventh Superseding Indictment charged Moody with knowingly using "a place generally known as 1307 10th Avenue North, Nashville, Tennessee," located "within 1000 feet of real property comprising a public elementary school," "for the purpose of manufacturing and distributing a controlled substance" and with actually distributing, possessing with intent to distribute, and manufacturing controlled substances "at said location," in violation of 21 U.S.C. §§ 841(a)(1), 856, and 860. (Crim. Doc. No. 2468, at 3, 6.) The Eleventh Superseding Indictment, which the court read to the jury, also included language clearly identifying cocaine and "cocaine base (crack cocaine)" as Schedule II controlled substances for purposes of 21 U.S.C. § 841(a)(1). (*See, e.g.*, Crim. Doc. No. 2663, at 165, 166.) In addition, the jury was expressly instructed that crack cocaine is a Schedule II controlled substance. (*Id.* at 174–75.)

Specifically regarding Counts 5 and 12, the jury was instructed that, to find the defendant guilty of violating 21 U.S.C. § 860 as charged in those counts, it must first find that the government had proved beyond a reasonable doubt that the defendant had committed a violation

of 21 U.S.C. § 841(a)(1) or § 856 and that he did so within 1,000 feet of a public elementary school. (*Id.* at 172.) The court had previously defined the elements of §§ 841(a)(1) and 856, instructing the jury that,

> [f]or the defendant to be found guilty under Section 841 (a)(1) and/or 21 U.S.C. Section 856, the government must prove beyond a reasonable doubt that the defendant knowingly or intentionally possessed a controlled substance and that the defendant intended to manufacture or distribute that controlled substance, (2) that the defendant knowingly or intentionally distributed the controlled substance, and that the defendant knew at the time of the distribution that the substance was a controlled substance, or (3) that the defendant manufactured a controlled substance and that the defendant did so knowingly or intentionally.

(Crim. Doc. No. 2663, at 170–71.)

In other words, the jury was clearly and correctly instructed on every element of § 860 and informed that it must find every element of the crime, including the elements of § 841 or 856, beyond a reasonable doubt. While there was no specific supplemental instruction defining the term "controlled substance," the jury was informed repeatedly that cocaine and crack cocaine are Schedule II controlled substances, and the evidence presented at trial only concerned the defendant's manufacture and distribution of those two controlled substances. Even assuming for the sake of argument that the court erred in failing to specifically define the term, Moody has not shown that he was prejudiced by that failure, that there was any possibility that the jury was confused as to the meaning of the term, or, consequently, that counsel was ineffective for failing to insist on a more precise definition of the term.

The movant is not entitled to relief on Claims 9, 12(i), or 13(i).

### *Claims 10 and 13(j)*

In Claim 10, which contains four subparts, Moody contends that his sentence enhancement as a career offender under §§ 4B1.1 and 4B1.2 of the U.S. Sentencing Guidelines and as an armed career criminal under the Armed Career Criminal Act is unconstitutional,

because it contravenes the Supreme Court's pronouncement in *Johnson v. United States*, 135 S. Ct. 2551 (2015). This claim is procedurally defaulted, but his claim that appellate counsel was ineffective for failing to raise the "*Johnson v. United States* and *Welch v. United States* issue on direct appeal" (Claim 13(j), Doc. No. 13, at 19) is not.

The movant offers no argument or explanation for his *Johnson* (or *Welch*) claims. He simply states, in full, as follows:

Petitioner's convictions violate *Johnson v. United States* . . . where, inter alia:

a. Under *Johnson*, Petitioner's prior convictions do no[t] qualify under the force clause and the residual clause was ruled unconstitutionally vague in *Johnson*.

b. Under *Johnson*, § 924(c) is void for vagueness.

c. Under *Johnson*, conspiracy under 21 U.S.C. § 846 cannot form the basis for an enhancement under § 924(c).

d. Under *Johnson*, guideline enhancement under 4B1.1, 4B1.2, Career Offender and Armed Career Criminal Act are void for vagueness.

(Doc. No. 13, at 9.)

The movant fails to elaborate upon these objections, but the court understands him to be arguing that: (a) his convictions under 18 U.S.C. §§ 922(g)(1) and 924(e) on Counts 10 and 11, for being a previously convicted felon in possession of a firearm and ammunition, violate *Johnson*, because his prior convictions do not qualify as "violent felonies" under § 924(e)(2)(B)(ii), and *Johnson* established that § 924(e)(2)(B)(i) is void for vagueness; (b) his conviction on Count 7 under 18 U.S.C. § 924(c) for possession of a firearm in furtherance of a drug trafficking crime is invalid, because § 924(c) is void for vagueness, under *Johnson*; (c) his conviction on Count 7 is invalid insofar as it is premised upon attempt or conspiracy to commit any drug-related offense, 21 U.S.C. § 846; and (d) his sentencing as a career offender under § 4B1.1 of the U.S. Sentencing Guidelines violates *Johnson*. These claims are substantively

without merit, and the movant fails to articulate any prejudice arising from counsel's failure to raise a *Johnson* or *Welch* claim.

First, Section 922(g)(1) makes it unlawful for a previously convicted felon to possess any firearm or ammunition that has been transported in interstate commerce. Section 924(e) mandates a minimum sentence of fifteen years for any person convicted under § 922(g)(1) who has "three previous convictions . . . for a violent felony or a serious drug offense." Section 924(e)(2)(A) defines the term "serious drug offense," and § 924(e)(2)(B) defines "violent felony." According to the Presentence Report, at the time he committed the crimes at issue in this case, Moody had at least two prior state court felony drug convictions that qualify as serious drug offenses under § 924(e)(2)(A) and at least one conviction for a violent felony in the form of attempted aggravated robbery. (Presentence Report, Crim. Doc. No. 2574 ¶ 60.) Moody does even attempt to argue that the drug offenses do not qualify as "serious" for purposes of § 924(e)(2)(A), and the Sixth Circuit has held that attempted aggravated robbery under Tennessee law is a qualifying violent felony. *See, e.g.*, *United States v. Lester*, 719 F. App'x 455, 458-59 (6th Cir. 2017) (affirming application of the ACCA based on a prior conviction for attempted aggravated robbery under Tennessee law).

Second, Count 7 charged Moody under "Title 18, United States Code, Section 924(c)" with possession of a firearm in furtherance of a drug-trafficking crime, specifically with unlawfully manufacturing and possessing a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). (Crim. Doc. No. 2468, at 4.) Although the relevant subsection of 924(c) is not spelled out in the indictment, the reference to "in furtherance of a drug trafficking crime" makes it clear that § 924(c) was not applied based on possession of a firearm

during the commission of a "crime of violence" as defined in § 924(c)(3).[7] Moody was found guilty on Counts 5 and 6 of violating § 841(a)(1), which clearly falls within § 924(c)(2)'s definition of a "drug trafficking crime," which encompasses "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)." Neither *Johnson* nor any Sixth Circuit opinion of which this court is aware has held that § 924(c)(2) is void for vagueness.

Third, because his conviction on Count 7 was clearly premised upon violations of § 841(a)(1) and not § 846, the court is at a loss to understand Claim 10(c). Regardless, even if Count 7 were based on an underlying violation of § 846, a conspiracy under that provision would also qualify as a § 924(c)(2) predicate, because it too is a "felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)" and, therefore, a drug-trafficking crime. 21 U.S.C. § 924(c)(2).

Finally, regarding Claim 10(d), Moody's challenge to his classification as a career offender under §§ 4B1.1 and 4B1.2 of the U.S. Sentencing Guidelines is completely foreclosed by the Supreme Court's pronouncement that "the Guidelines are not subject to a vagueness challenge under the Due Process Clause" and that "[t]he residual clause in § 4B1.2(a)(2) therefore is not void for vagueness." *Beckles v. United States*, 137 S. Ct. 886, 892 (2017).

All of Moody's *Johnson* claims are devoid of merit, and counsel was not ineffective for failing to raise them.

---

[7] The language in § 924(c)(3)(B) is virtually identical to that of 18 U.S.C. § 16(b), which the Supreme Court held in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), to be void for vagueness. The Sixth Circuit, however, had previously held that § 924(c)'s "residual clause" "is considerably narrower than the statute invalidated by the Court in *Johnson*" and is not unconstitutionally vague. *United States v. Taylor*, 814 F.3d 340, 375 (6th Cir. 2016). Following *Dimaya*, the Sixth Circuit has recognized that, while *Taylor* "stands on uncertain ground," it remains binding in this circuit. *United States v. Richardson*, 906 F.3d 417, 425 (6th Cir. Oct. 11, 2018).

### Claims 11, 12(m), and 13(k)

Moody claims that his convictions violate the Fifth Amendment (Claim 11), that trial counsel was ineffective for failing to raise a challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986), to the striking of minority jurors (Claim 12(m)), and that appellate counsel was ineffective for failing to order a transcript of the jury *voir dire* (Claim 13(k)). The substantive claim is procedurally defaulted, and Moody has not shown that counsel was constitutionally ineffective, for purposes of supplying the requisite cause and actual prejudice to overcome the default.

As set forth above, it is the petitioner's burden to show his entitlement to relief. *Potter v. United States*, 887 F.3d 785, 787–88 (6th Cir. 2018). When a movant's claims are "stated in the form of conclusions without any allegations of facts in support thereof, as well as being unsupported by proof or reference to such proof," the motion is "legally insufficient to sustain a review." *Short v. United States*, 504 F.2d 63, 65 (6th Cir. 1974) (per curiam); *see also Thomas v. United States*, 849 F.3d 669, 681 (6th Cir. 2017) ("Bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the government to respond to discovery or to require an evidentiary hearing.").

Here, the only "fact" asserted in support of the *Batson* claims is that two potential jurors who happened to be African American were removed. (Doc. No. 13, at 9.) That fact, standing alone, does not establish a *Batson* violation. Moody asserts that their removal was "in part or in substantial part because of race" (*id.*), but he does not offer any factual support for that conclusory assertion.[8] His complaint that counsel failed to secure a transcript of the jury *voir dire* for purposes of appeal does not come to his aid, because he offers no suggestion of what facts

---

[8] The record contains no information about the racial make-up of the jury venire panel or of the jury as empaneled.

supporting his claims the transcript might have revealed. Mere speculation is not sufficient to substantiate his claims.

Moody has not shown that he is entitled to relief on the basis of *Batson* or any ineffective-assistance claim related to *Batson*.

### Claims 12(j), (k), (l), (n), and (o)

Moody asserts five additional subclaims of ineffective assistance of trial counsel that do not appear to overlap with his substantive claims: (1) counsel failed to articulate a claim based on a Fourth Amendment violation in connection with the introduction into evidence of a videotape (Claim 12(j)); (2) counsel failed to challenge Moody's prior convictions for purposes of the § 922(g) conviction (Claim 12(k)); (3) counsel failed to challenge an alleged *Apprendi* violation based on the amount of drugs at issue (Claim 12(l)); (4) counsel failed to object to the use of Moody's prior convictions to enhance his sentences in this case or to argue that Moody's lawyer during his state criminal proceedings was ineffective for failing to inform him at the time of his state court convictions that those convictions could be used to enhance his sentences on later crimes (Claim 12(n)); and (5) counsel failed to object at trial to the use of state court convictions at sentencing on the basis that 21 U.S.C. § 851(e) is unconstitutional (Claim 12(o)). These claims are not procedurally defaulted, but they are devoid of merit.

First, Moody offers no indication of what possible argument counsel could have raised in favor of suppression of the videotape, much less that he was prejudiced by failure to raise that argument. Claim 12(j) is without merit.

Second, he offers no basis for collaterally attacking his state court convictions or showing that any of them should not have been counted for purposes of establishing his status as an armed career criminal under the ACCA or a career offender under the Sentencing Guidelines. *Cf. Custis v. United States*, 511 U.S. 485, 491–97 (1994) (holding that a defendant may not collaterally

attack the prior state convictions used to enhance his sentence under the ACCA, except on the grounds that the convictions were obtained in violation of the right to counsel). Claim 12(k) is without merit.

Third, with respect to Claim 12(l), Moody asserts:

> Trial counsel failed to challenge the *Apprendi* violation for not charging a statutory offense such as § 841(b)(1)(A) or (b)(1)(B) for certain enumerated drug type and quantity in the indictment. The indictment charged a violation of § 841(a)(1) which applies to all other violations involving Schedule I or II controlled substances and carries a penalty under § 841(b)(1)(C).

(Doc. No. 13, at 14.) Moody did not provide any further argument to support this claim, but the court understands him to be asserting that his sentence is unconstitutional and contravenes *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because it was increased on the basis of a quantity of drugs not found by the jury beyond a reasonable doubt. However, Moody has failed to show that his statutory sentencing range for any of the crimes of conviction was actually increased based on judicial factfinding as to the quantity of drugs involved.

In *Apprendi*, the Supreme Court held that, "[o]ther than a fact of prior conviction, any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490 (emphasis added). More recently, in *Alleyne v. United States*, 570 U.S. 99 (2013), the Court held that any fact that increases the mandatory minimum sentence for a crime is an "element" of the crime that must be submitted to the jury for finding beyond a reasonable doubt. Neither of these holdings came into play in Moody's sentencing.

His life sentence on Counts 5, 6, 9, and 12 was premised entirely on 21 U.S.C. § 860(b), which, as discussed above, cross-references § 841(b)(1)(A). Section 841(b)(1)(A) provides that any person who commits a violation of 21 U.S.C. § 860—that is, by manufacturing drugs within 1000 feet of a school or public housing facility, among other places—"after two or more prior

convictions for a felony drug offense have become final . . . shall be sentenced to a mandatory term of life imprisonment without release." Again, the Supreme Court has never held that the fact of a prior conviction is an element of a crime that must be proved beyond a reasonable doubt. *United States v. Farrad*, 895 F.3d 859, 888 (6th Cir. 2018). And the quantity of drugs at issue was irrelevant to the life sentence imposed on Counts 5, 6, 9, and 12.

The only other count indicted under 21 U.S.C. § 841 is Count 8, charging conspiracy to possess cocaine and crack cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a), 846, and 2. The PSR states that the sentence on this count was subject to enhancement under 21 U.S.C. §§ 841(b)(1)(C) and 851. (Crim. Doc. No. 2574, at 2.) Section 851 prescribes the procedure for the filing of an "information . . . stating in writing the previous convictions" the government intends to rely upon for purposes of sentence enhancement. 21 U.S.C. § 851(a)(1). Section 841(b)(1)(C) provides in relevant part that, if any person is found guilty of a drug-related offense involving a Schedule I or Schedule II controlled substance (which includes cocaine and crack cocaine) "after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 30 years." Moody was sentenced on Count 8 to the statutory maximum of 30 years (360 months) based on a judicial finding of prior drug offenses under § 851. Regardless of whether Judge Haynes took drug quantity into consideration in setting the sentence for Count 8,[9] the sentence did not exceed the statutory maximum. Consequently, it did not contravene *Apprendi*. Claim 12(l) is without merit.

---

[9] The indictment does not identify a specific quantity of cocaine involved in the conspiracy (Crim. Doc. No. 2468, at 4), but the PSR states that "[t]he total amount [of] drugs for which Moody is being held accountable in relation to Count[] 8 . . . is 8.2 grams of powder cocaine and 27.2 grams of crack cocaine (Crim. Doc. No. 2574, at 15). The transcript of the sentencing hearing is not in the record, and neither the Judgment nor the Sealed Statement of Reasons references drug quantity. (Crim. Doc. Nos. 2563, 2564.) Only the PSR's reference to drug quantity suggests that the sentencing judge might have taken quantity into consideration in setting the sentence on Count 8.

Fourth, Claim 12(n) amounts to a claim that the attorneys representing Moody in state court at the time of his prior convictions were ineffective for failing to notify him at that time that his state convictions could later be used to enhance his sentence on federal convictions. (*See* Doc. No. 13, at 14 ("[T]hus Petitioner was deprived of due process under the Fifth and Fourteenth Amendments and denied the effective assistance of counsel at his state court pleas.").) He offers no legal authority or argument in support of his claim that his counsel's failure to raise such an objection in his criminal proceedings in this court was an error or that he was in any way prejudiced by that failure. Claim 12(n) is without merit.

Claim 12(o) somewhat overlaps with Claim 12(n). Moody argues generally that counsel was ineffective for failing to "raise all potential objections" to the consideration of his state court convictions at sentencing, including that 21 U.S.C. § 851(e) is unconstitutional. Moody's argument that § 851(e) is unconstitutional is foreclosed by the Sixth Circuit's holding in *United States v. Reed*, 141 F.3d 644, 652 (6th Cir. 1998) (finding "no . . . compelling reason to hold that [§ 851(e)] is unconstitutional" and noting, "[i]n fact, [that] the Supreme Court has made it clear that Congress could choose to eliminate all collateral attacks on prior convictions with regard to sentence enhancement, save for the limited circumstance in which the prior conviction was obtained in violation of the right to have counsel appointed" (citing *Custis*, 511 U.S. at 491–97)). Moody does not suggest what other objections counsel should have raised or presented any evidence showing that, in the absence of § 851(e), he could have brought a meritorious collateral attack on any of his prior state court convictions.

In sum, all of Moody's ineffective-assistance claims—including both the stand-alone claims and those related to his substantive claims—fail to satisfy either prong of the *Strickland* analysis.

*Claim 14*

Last, Moody claims that the cumulative effect of all errors at trial deprived him of a fair trial. (Doc. No. 13, at 29.) It is well established that, even if individual errors in and of themselves do not constitute reversible error, a defendant may "show that the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair." *United States v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004). Here, however, Moody has not shown the existence of any constitutional errors at trial. "His cumulative-error claim therefore fails because there are simply no errors to cumulate." *Getsy v. Mitchell*, 495 F.3d 295, 317 (6th Cir. 2007).

## VI.    CONCLUSION

As set forth herein, the Amended Motion to Vacate will be denied without a hearing. An appropriate Order is filed herewith.

ENTER this 13th day of December 2018.

ALETA A. TRAUGER
United States District Judge